FILED
United States Court of Appeals
Tenth Circuit

April 23, 2015

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

JING LI,

　　　　　Petitioner,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

　　　　　Respondent.

No. 14-9582
(Petition for Review)

ORDER AND JUDGMENT[*]

Before **BACHARACH**, **PORFILIO**, and **BALDOCK**, Circuit Judges.

Jing Li is a native and citizen of China. He entered the United States legally,

but overstayed his visa and became subject to removal from this country. Mr. Li

filed an application seeking asylum, withholding of removal, and relief under the

Convention Against Torture (CAT), alleging that he had been persecuted in China

---

[*]　　　After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

because of his Christian faith and that he feared future persecution if returned to China.

An immigration judge (IJ) held a hearing at which Mr. Li testified. The IJ found his testimony not credible and unsupported by adequate corroborating evidence, and therefore denied relief. The Board of Immigration Appeals (BIA) dismissed Mr. Li's appeal. He now petitions for review of the BIA's final order of removal. We affirm in part, reverse in part, and remand for further proceedings.

**BACKGROUND**

Mr. Li was represented by counsel during the asylum hearing, but he briefed this petition for review pro se. He has admitted the allegations in the Notice to Appear and has conceded that he is subject to removal.

In his sworn statement in support of his asylum application, Mr. Li explained that the pressures of owning his own company in China had put him in a "spirit of high tension." Admin. R. at 142. In March 2008 he met a client named Haijun Gao, who told him that by becoming a Christian, Mr. Li could find relief from his job stress. Mr. Li began attending a church service that met in Mr. Gao's home. *Id.* He became a Christian, and was baptized on August 17, 2008.

In February 2010, Mr. Li came to this country as a tourist. During his visit, he "attend[ed] Sunday service in the local Chinese Christian church." *Id.* There, he "collected and brought some Gospel materials," which he took with him back to China. *Id.*

On March 3, 2010, two Chinese police officers came to Mr. Li's business. They took him to Public Security Bureau headquarters where police officers questioned him. They asked him if he knew Haijun Gao, and he said yes. The officers informed him that Mr. Gao had been arrested for distributing illegal materials from overseas, and that Mr. Gao had admitted to receiving these materials from Mr. Li. After Mr. Li denied that he had brought the materials to China as part of an anti-Party, anti-government plot, one of the officers became angry and poured a cup of water on his face.

The officers then questioned him about the church that met in Mr. Gao's home. When his answers proved unsatisfactory, one of the officers slapped him in the face and struck him with his fist. Another officer struck him with his baton. Mr. Li stated that as a result of the beating, his nose and mouth filled with blood.

The officers terminated the questioning and transferred him to a detention center. Two days later, he was released after his wife paid a fine. As a condition of release, Mr. Li signed a letter requiring him to report to a local police station every week, to refrain from family church activities, not to leave his residence without permission, and to be ready to be summoned at any time.

After being treated at a hospital, Mr. Li returned home to find that the police had confiscated some of his discs and his computer. The police told him they were continuing to investigate his case. With the help of a friend, Mr. Li escaped from China and came to America in April 2010. After he left, the police came to arrest

him several times, claiming that he was an unrepentant cult member and would be sentenced to prison if they caught him.

An asylum officer reviewed Mr. Li's application. The asylum officer found Mr. Li's story not credible because, among other things, he claimed that in February 2010 he obtained church materials when he went to church in California on a Sunday, then flew back to China the next day (Monday), which was inconsistent with evidence that he actually flew back to China on Sunday:

> [Mr. Li] testified that one day prior to leaving for China, on Sunday, February 21, 2010, he went to a Christian church . . . where he collected certain church materials to take with him to China. When asked to confirm the date, [Mr. Li] stated it was February 21, 2010. He was asked if he and his son left on the same day to [return to] China, which he confirmed. He was asked about the day and time difference in China, and if he could have been mistaken about the day he went to church. However, [Mr. Li] insisted that it was Sunday, February 21, 2010, and that he left for China on February 22, 2010, denying that it was a different date or that he was mistaken. However, when confronted with information that indicates that he left the United States on February 21, 2010, [Mr. Li] was unable to explain this inconsistency. . . . [Given the timing of flights to China, Mr. Li] could not have attended a church service on Sunday February 21, 2010 since he was traveling back to China on that day.

*Id.* at 128.

The asylum officer denied asylum and referred the case to the IJ. Before Mr. Li testified at the IJ hearing, his counsel asked to modify his previous sworn statement to omit the reference to his attendance at a "Sunday service" when he was in California. *Id*. at 72. Mr. Li then testified, recounting a story similar to the one he had presented in his asylum application.

- 4 -

On cross-examination, Mr. Li was asked about the timing of his 2010 trip to the United States and his return to China:

Q. And you're sure you left on February 21st?

A. Yes. I left [the] United States on February 21, 2010.

Q. And when did you arrive back in China?

A. I arrived in China [on] February 22, 2010.

Q. Now when you originally filed for asylum, you told the asylum officer that you left the United States February 22, 2010. Why did you tell him that?

A. Yes. I realized that. That was because I could not remember very clearly on that date. Secondly, I was very nervous on that day.

Q. So you couldn't remember clearly and they asked you to verify and you were adamant that you left on the 22nd. Isn't that right?

A. First of all, I was very nervous again. I forgot to account for the time difference between China and [the] United States.

*Id.* at 95-96.

He was questioned about his attendance at the church service during his tour in California, and this time he said he went to a *Saturday evening service* rather than a Sunday morning service, but he could not remember the name of the church:

Q. And when were the free times for shopping?

A. It was on February 20, 2010.

Q. What day of the week was that?

A. That's a Saturday.

Q. And you said you went to church. When did you go to church?

- 5 -

A. We went to an evening service.

Q. When?  What day?

A. It was on the evening of February 20, 2010.

Q. Where did you go to church?

A. The actual[] address I cannot tell you.  I don't have it, but the tour guide took me there.  It was very close to my hotel.

Q. What was the name of the church?

A. I don't know.

Q. Would it be Christian Shepherd Gospel Church?

A. I'm not sure.  I only know it was a Christian church.

Q. Sir, you told the asylum officer that you went to the church called Christian Shepherd Gospel Church.  Would you say that's correct?

A. Probably I was nervous at that time, but right now, I can't really remember what I told him.

*Id.* at 96-97.

The IJ found that Mr. Li was not a credible witness.  He noted that Mr. Li's testimony was "vague, evasive, and at times defensive."  *Id.* at 53-54.  He further determined that the inconsistencies and omissions in his testimony "far outweigh[ed]" considerations such as "elapsed time, translation issues, and cultural norms."  *Id.* at 54.  In particular, the IJ singled out Mr. Li's confusion about when he attended the California church service before flying back to China, stating he was "not convinced by [Mr. Li's] assertion that he attended church on Saturday evening

- 6 -

rather than Sunday as [Mr. Li] did not offer any explanation for how he confused a Saturday evening service with a Sunday church service." *Id.* He also cited Mr. Li's defensiveness about the name of the church he claimed to have attended in California, and his inability to explain how he was able to leave China while criminal charges were pending against him.

The IJ further found that Mr. Li had failed to provide sufficient independent evidence to corroborate his application. With regard to past persecution, Mr. Li submitted a fine receipt from the police department and "a hospital record indicating that he was held for observation on March 5, 2010, after complaining of dizziness, headache, difficulty working and standing still, and belly pain," which further indicated that he "had bruises, swelling, and stomach pain and that he got better within a day." *Id.* at 55. The IJ concluded this evidence provided only limited corroboration for Mr. Li's claims.

With regard to future persecution, the IJ concluded that Mr. Li had failed to provide evidence sufficient to corroborate his claim that he is a Christian. Mr. Li brought a deacon from his church with him to the hearing, but the agency objected to her testimony because it had been provided no information about her. The IJ did not permit the deacon to testify, but he permitted Mr. Li's attorney to make an offer of proof. According to the attorney, she would have testified concerning Mr. Li's participation at the Denver Chinese Evangelical Free Church and to her belief that Mr. Li is a Christian. The IJ stated he would give the proffered testimony the

appropriate weight. But in his decision, he noted that Mr. Li "ha[d] not provided any evidence that [the deacon] herself actually belongs to any church," and had not "provided any affidavits from members of his house church in China or from church leaders in Denver." *Id.* at 56. The IJ further opined that even if Mr. Li had sufficiently demonstrated that he was a Christian, "he gave no indication that he would object to attending a registered church in China as opposed to an unregistered one." *Id.*

Given Mr. Li's failure to meet his burden concerning asylum, the IJ concluded he also failed to show entitlement to withholding of removal. And his CAT claim failed because he "neither alleged past torture nor asserted a fear of torture in the future" and "[t]here is no evidence the Chinese government is currently engaged in the systematic gross, flagrant, or mass violation of human rights or that the government acquiesces to such violations." *Id.* at 56.

On appeal, in a brief decision by a single member, the BIA found that the IJ's adverse credibility finding was not clearly erroneous and therefore upheld the denial of Mr. Li's asylum and withholding of removal claims. The BIA further upheld the denial of his CAT claim, finding he had not met his burden of proof and had failed to present evidence independent of his testimony to support his claim.

## ANALYSIS

Where, as here, a single member of the BIA issues a brief order affirming the IJ's decision, we review the BIA's order as the final agency determination and limit

our review to the grounds specifically relied upon by the BIA. *Diallo v. Gonzales*, 447 F.3d 1274, 1279 (10th Cir. 2006). But when the BIA incorporates the IJ's rationale, "[w]e may consult the IJ's decision to give substance to the BIA's reasoning." *Razkane v. Holder*, 562 F.3d 1283, 1287 (10th Cir. 2009). We review the BIA's legal conclusions de novo and its factual determinations, including credibility determinations, for substantial evidence. *See id.*; *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006) (substantial evidence standard applies to credibility determinations). "[T]he BIA's findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." *Rivera–Barrientos v. Holder*, 666 F.3d 641, 645 (10th Cir. 2012) (internal quotation marks omitted).

The asylum standard is well established:

To qualify for asylum, the applicant must be a refugee. A refugee is unable or unwilling to return to his or her country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. These five categories are called protected grounds. An applicant can obtain refugee status: (1) through evidence of a well-founded fear of future persecution on account of a protected ground; (2) through a showing of past persecution on account of a protected ground, which gives rise to a rebuttable presumption of having a well-founded fear of future persecution on account of a protected ground; or (3) through a showing of past persecution so severe as to provide a compelling argument against removal, even though there is no danger of future persecution on the basis of a protected ground.

*Rodas-Orellana v. Holder*, 780 F.3d 982, 986 (10th Cir. 2015) (citations and internal quotation marks omitted).

- 9 -

"As for withholding of removal, the [Immigration and Nationality Act] prohibits removal "if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." *Id.* (internal quotation marks omitted). "The burden of proof for withholding of removal is higher than for asylum." *Id.* "For withholding, an applicant must prove a clear probability of persecution on account of a protected ground." *Id.* (internal quotation marks omitted).

"Article 3 of the Convention Against Torture prohibits the return of an alien to a country where it is more likely than not that he will be subject to torture by a public official, or at the instigation or with the acquiescence of such an official." *Cruz-Funez v. Gonzales*, 406 F.3d 1187, 1192 (10th Cir. 2005) (brackets and internal quotation marks omitted).

### 1. Adverse Credibility Finding

Mr. Li challenges the IJ's finding, upheld by the BIA, that he did not testify credibly concerning the past persecution he allegedly suffered in China. The

> trier of fact [for an asylum claim] may base a credibility determination on the . . . candor, or responsiveness of the applicant . . . , the inherent plausibility of the applicant's . . . account, the consistency between the applicant's . . . written and oral statements . . . , the internal consistency of each such statement, [and] the consistency of such statements with other evidence of record. . . , and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

- 10 -

8 U.S.C. § 1158(b)(1)(B)(iii).

Mr. Li argues that his confusion about the dates when he attended church and returned to China were minor discrepancies caused by stress that involved events three years before the IJ hearing. He downplays the serious inconsistencies the asylum officer, the IJ, and the BIA all noted concerning whether Mr. Li could have gone to church when he said he did to obtain the literature that allegedly caused him to be arrested. Mr. Li fails to offer a credible explanation concerning his confusion between Sunday morning and Saturday night services.

Mr. Li also complains that the asylum officer was not present at the IJ hearing to be cross-examined. But he fails to identify any specific cross-examination he might have conducted that could have affected the outcome in this case.

Mr. Li further argues that the IJ and the BIA should not have discounted his credibility based on his failure to explain how he was able to take a commercial flight out of China while he was allegedly on probation and forbidden to travel. But in response to the hole in his story, he presents only speculative explanations. *See* Pet. Br. at 8 (stating someone at the travel agency that helped him get his visa "*might very well have* . . . bribed one officer/official or more at the airport" and that "[t]his *could very well have* been the case even though [the travel agent] did not work for the Chinese government" (emphasis added)); 10 ("[Mr. Li] *might not have* been under 24/7 surveillance" and "*it is surely plausible that* [he] could have left China despite having been under surveillance or monitored by the police") (emphasis added). It

- 11 -

was Mr. Li's burden to establish the factual basis for his asylum application, and the IJ and BIA did not err in concluding that he failed to patch the holes in his story concerning his exit from China.

The IJ also noted Mr. Li's failure to obtain affidavits from his fellow church members or family members in China. Again, Mr. Li responds with speculation, stating that had he been asked about this at the hearing, "[p]erhaps [he] would have explained that his former church mates and he were afraid to correspond with one another by mail." *Id.* at 14. This falls short of a credible explanation for his failure to submit evidence in support of his claims.

In sum, we might have reached a different conclusion concerning Mr. Li's credibility were we the finder of fact, but our exacting standard of review compels us to defer to the IJ's adverse credibility findings, upheld by the BIA, concerning Mr. Li's account of past persecution in China.

### 2. Lack of Corroboration

In light of this adverse credibility finding, the IJ further found that Mr. Li had not presented sufficient corroborating evidence to sustain his claim. *See* 8 U.S.C. § 1158(b)(1)(B)(ii) ("The testimony of the applicant may be sufficient to sustain the applicant's burden *without* corroboration, but only if the applicant satisfies the trier of fact that the applicant's testimony *is credible*, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee." (emphasis added)).

The BIA did not explicitly discuss the corroboration issue, at least not in the context of Mr. Li's asylum and withholding of removal claims.[1]

The BIA's silence does not pose a problem in affirming the denial of asylum based on past persecution, however. The BIA implicitly adopted the IJ's finding that Mr. Li failed to sufficiently corroborate his story of past persecution. *See Sarr v. Gonzales*, 474 F.3d 783, 790 (10th Cir. 2007) (stating if the BIA "incorporated the IJ's reasoning, either expressly *or by implication*," we may consider the IJ's findings as necessary to understand the BIA's decision (emphasis added)). We reach this conclusion for three reasons. First, the BIA referenced pages 8-10 of the IJ's decision, which included his discussion of corroborating evidence of past persecution. Second, it referred to the "totality of the circumstances" in adopting the IJ's findings. Admin. R. at 2. Third, the BIA could hardly have reasoned from the IJ's adverse credibility finding that Mr. Li had failed to satisfy his burden of proof concerning past persecution if it believed the *other* evidence he submitted was sufficient to meet that very burden. We may therefore turn to the IJ's findings, implicitly adopted by the BIA, to supplement the BIA's ruling on this issue.

Mr. Li contends that the fine receipt he submitted is consistent with his claim that he was persecuted. But this argument misses the IJ's point: of itself, the fine receipt did not establish that the police actually detained and beat him, only that he or

---

[1] The BIA did find that the independent evidence was insufficient to corroborate Mr. Li's CAT claim.

- 13 -

his wife paid a fine. While the medical record is consistent with a beating at the hands of police, it does not necessarily establish that the injuries described were caused by such a beating, as opposed to some other cause. Although these records provide some support for Mr. Li's story, we cannot say that any reasonable adjudicator would be compelled to conclude from them alone that his story was true. We must therefore uphold the IJ and BIA's conclusions that there was insufficient proof of past persecution.

### 3. Fear of Future Persecution

The IJ also found that Mr. Li failed to provide corroborating evidence for his contention that he had a well-founded fear of future persecution. Although Mr. Li challenged this finding before the BIA, the BIA failed to address the issue. The BIA gave no indication it had considered whether Mr. Li demonstrated a well-founded fear of future persecution.

We can only affirm the BIA's single-member decision based on grounds it addressed. *Sidabutar v. Gonzales*, 503 F.3d 1116, 1123 (10th Cir. 2007). We cannot supply our own, additional reasons for affirming the BIA's decision. *Mickeviciute v. INS*, 327 F.3d 1159, 1162-63 (10th Cir. 2003). And, "[w]hen the BIA has failed to address a ground that appears to have substance," remand for further proceedings is appropriate. *Rivera–Barrientos*, 666 F.3d at 645.

Because Mr. Li's future-persecution arguments have sufficient substance, the best course is to remand for additional consideration and discussion by the BIA of

that claim.  In its decision, the BIA rejected only Mr. Li's individualized allegations of past persecution as not credible.  Admin. R. at 2.  Even if these allegations were not credible, however, he still could have established a likelihood of future persecution by independent evidence showing that he was a member of a group subject to a pattern or practice of persecution, and that he had a reasonable fear of persecution because he belongs to such a group.  *See* 8 C.F.R. § 1208.13(b)(2)(iii).

The IJ acknowledged that "[t]he 2011 International Religious Freedom Report for China confirms that, in some areas of the country, police arrest and punish members of unregistered churches."  Admin. R. at 56.  But he found insufficient corroborating evidence that Mr. Li is a Christian or that he was unwilling to attend a registered church.  Mr. Li's challenges to these findings, presented to the BIA and to us, have some substance.  We have admonished the immigration courts to exercise caution in rejecting aliens' assertions of religious faith.  *See Yan v. Gonzales*, 438 F.3d 1249, 1252-56 (10th Cir. 2006).  The record contains no evidence that unregistered house churches are religiously identical to those registered with the government, or that Mr. Li ever attended, or was willing to attend, a registered church.  Although these considerations may not ultimately justify relief for Mr. Li, particularly in light of his burden to establish his eligibility for asylum, his arguments are sufficiently substantial to require a remand for the BIA to articulate its reasons for rejecting his future persecution claim.

- 15 -

### 4. Withholding of Removal

The BIA rejected Mr. Li's withholding claim in a single sentence: "Inasmuch as [Mr. Li] has not testified credibly in support of his asylum application, he has not established that he provided credible testimony and satisfied his burden of proof for withholding of removal." Admin. R. at 3. Withholding of removal claims are concerned with the likelihood of future persecution. As we have noted, the BIA did not address Mr. Li's challenge to the IJ's findings concerning future persecution. For the same reasons that further proceedings are required concerning Mr. Li's asylum claim, we also reverse the denial of withholding relief and remand for further proceedings.

### 5. CAT Claim

Mr. Li's CAT claim rests primarily on the assertion that the police will torture him if he returns to China because he was previously persecuted and because he left the country while under police supervision. But these are precisely the allegations that the IJ and the BIA found not credible and insufficiently corroborated. The BIA made sufficient findings to support the denial of Mr. Li's CAT claim, including the lack of corroboration for that claim, and its decision is supported by substantial evidence. We therefore affirm the denial of his CAT claim.

### CONCLUSION

We affirm the BIA's finding that Mr. Li failed to establish past persecution, either by credible testimony or independent evidence, sufficient to satisfy his burden

of proof concerning his asylum claim. We reverse the denial of asylum on the issue of whether he faces a well-founded fear of future persecution, which the BIA did not discuss, and remand for further proceedings concerning that claim. We also reverse the denial of his claim for withholding of removal, and remand for further proceedings on that claim. We affirm the denial of CAT relief. Petitioner's motion to proceed *in forma pauperis* is granted.

Entered for the Court

Bobby R. Baldock
Circuit Judge