**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 2 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CARLOS CRUZ-FUNEZ and JOSE
ENRIQUE VALLADARES-
CASTELLANOS,

        Petitioners,

    v.

ALBERTO R. GONZALES, Attorney
General,*

        Respondent.

No. 03-9619

---

**PETITION FOR REVIEW**
**FROM THE BOARD OF IMMIGRATION APPEALS**
**(Nos. A 78-046-589 & A 78-046-591)**

---

Submitted on the briefs:

Shelley Wittevrongel, Boulder, Colorado, for Petitioners.

Peter D. Keisler, Assistant Attorney General, Mark Walters, Assistant Director, Anh-Thu P. Mai, Attorney, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, D.C., for Respondent.

---

\*     On February 4, 2005, Alberto R. Gonzales became the United States Attorney General. In accordance with Rule 43(c)(2) of the Federal Rules of Appellate Procedure, Mr. Gonzales is substituted for John Ashcroft as the Respondent in this action.

Before **TACHA**, Chief Judge, **HENRY**, and **O'BRIEN**, Circuit Judges.

**HENRY,** Circuit Judge.

Petitioners Carlos Cruz-Funez and Jose Enrique Valladares-Castellanos petition for review of a decision of the Board of Immigration Appeals (BIA or Board) denying their claims for asylum and for withholding of removal under both the Immigration and Nationality Act (INA) and the United Nations Convention Against Torture (CAT). We have jurisdiction to review the agency's decision under 8 U.S.C. § 1252(a)(1), and we deny the petition for review. *

## I. Procedural History and Issues on Appeal

The immigration judge (IJ) consolidated petitioners' cases. According to the IJ's decision, [1] petitioners are natives and citizens of Honduras who were and are business partners. They entered the United States illegally on or about June 28, 2000. They were noticed to appear on June 28, 2000, and were charged

---

* After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

[1] Analogous to 10th Cir. R. 28.2(A), a petitioner in an immigration case should attach both the Board's decision and the IJ's decision to his opening brief.

-2-

with entering the United States without inspection under § 212(a)(6)(A)(i) of the INA, 8 U.S.C. § 1182(a)(6)(A)(i). Petitioners applied for asylum and withholding of removal, asserting that they fear persecution or torture if they return to Honduras. They claimed that their business debt to an unscrupulous creditor, Pedro Trejo, put them in the particular social group of small businessmen ruined in 1998 by Hurricane Mitch who are indebted to private creditors connected to the corrupt Honduran business and political system. The IJ analyzed their claims and denied them both asylum and withholding of removal.

Petitioners appealed to the Board, which issued a decision through a single Board member. See Admin. R. at 1. [2] That decision, in pertinent part, states:

> The respondent has appealed from the Immigration Judge's decision dated January 08, 2002. We have reviewed the record and we agree that the respondent failed to meet his burden of establishing past persecution or a well-founded fear of persecution on account of one of the statutorily protected grounds, or that it is more likely than not that he will be persecuted or subjected to torture upon his return to Honduras. See section 101(a)(42)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(42)(A); INS v. Elias-Zacarias,

_____

[2] Although the Board actually issued separate decisions for Mr. Valladares-Castellanos and Mr. Cruz-Funez, the administrative record contains the Board's decision for only Mr. Valladares-Castellanos. Admin. R. at 2. In the Board's transmittal letter, however, Mr. Cruz-Funez is identified by his "A number" as a "rider" to Mr. Valladares-Castellanos's claim. Id. at 1. We take judicial notice that the Board's decision for Mr. Cruz-Funez, which appears on the website of the Executive Office of Immigration Review under Mr. Valladares-Castellanos' "A number," is identical in all respects pertinent to this appeal, and we therefore refer to the Board's decision as singular in this decision.

502 U.S. 478 (1992); INS v. Cardoza-Fonseca, 480 U.S. 421 (1987); INS v. Stevic, 467 U.S. 407 (1984); 8 C.F.R. § 1208.16(c)(2); Matter of Y-L-, A-G-, & R-S-R, 23 I&N Dec. 270 (A.G. 2002); Matter of S-V-, 22 I&N Dec. 1306 (BIA 2000). The respondent has presented no arguments on appeal which persuade us that this decision should be disturbed. Accordingly, the appeal is dismissed.

Admin. R. at 2. The Board member's cited authorities are different, except for one case, from those the IJ relied on. And that one case, INS v. Stevic, 467 U.S. 407 (1984), was cited by the IJ only for a general standard of asylum law. See Admin. R. at 142. The Board member did not mention any of the other authorities the IJ relied on, including the five cases the IJ cited in his discussion about what constitutes a particular social group for purposes of asylum and withholding of removal. See id. at 148-50. The Board member's citation of different authorities suggests that he analyzed this case differently than the IJ did.

Petitioners contend that: (1) the Board's decision is neither a summary affirmance nor a reasoned decision, and it therefore violates administrative law and their due process rights; (2) they were eligible for asylum because of their status as persecuted members of the refugee category, "particular social group," see 8 U.S.C. § 1101(a)(42)(A); and (3) they proved the Honduran government's acquiescence in torture and are therefore entitled to relief under the CAT.

## II.  The Board's Streamlining Procedures

The first question before us is whether we should review the Board's decision or the IJ's decision in this case.  "[T]he INA grants us general jurisdiction to review a 'final order of removal.'"  <u>Tsegay v. Ashcroft</u>, 386 F.3d 1347, 1353 (10th Cir. 2004) (citing 8 U.S.C. § 1252(a)(1)).  Because an alien facing removal may appeal to the Board as of right, <u>see</u> 8 C.F.R. §§ 1003.1(b)(3), 1003.38(a), 1240.15, and because the Board has the power to review the IJ's legal conclusions de novo and his factual findings for clear error, <u>see</u> <u>id.</u> § 1003.1(d)(3), there is no "final order" until the Board acts.  In light of the Board's "streamlining" procedures under 8 C.F.R. § 1003.1, however, the Board's decision denying an alien relief from removal may constitute the final order of removal, or the Board's decision may be "the agency action that makes the IJ's decision the final order of removal," <u>Tsegay</u>, 386 F.3d at 1353; <u>see also</u> 8 C.F.R. § 1003.1(e)(4)(ii).  Although the IJ's decision in this case was issued before the expanded streamlining procedures were enacted on August 26, 2002, the 2002 amendment was expressly made applicable to pending cases.  67 Fed. Reg. at 54898-54899.  As a result, the amended streamlining regulation governs the Board's December 10, 2003 decision.

### III. The Board's Decision

The Board's streamlining procedure was expanded in 2002 to allow an individual Board member to issue a brief written opinion in certain cases, see 8 C.F.R. § 1003.1(e)(5), as an option to affirming without opinion, see id. § 1003.1(e)(4), or referring the case to a three-member panel, see id. § 1003.1(e)(6). It is clear that the Board member who issued the decision before us did not affirm without opinion under § 1003.1(e)(4)(i)–he did not use the language mandated by § 1003.1(e)(4)(ii) or include the mandatory reference to the regulation. As a result, the IJ's decision does not constitute the final agency determination under § 1003.1(e)(4)(ii).

It is apparent from the Board member's decision, rather, that he acted under § 1003.1(e)(5). As the Third Circuit has pointed out: "If the case is more significant than an (e)(4) case and less significant than an (e)(6) case, the single BIA member will decide the merits of the appeal by himself and issue 'a brief order, affirming, modifying or remanding' under § 1003.1(e)(5)." Smriko v. Ashcroft, 387 F.3d 279, 293 (3d Cir. 2004) (quoting § 1003.1(e)(5)).

In Gjyzi v. Ashcroft, 386 F.3d 710, 715-16 (6th Cir. 2004), the Sixth Circuit considered both the BIA's and the IJ's decisions. There, the BIA repudiated the IJ's credibility findings, yet affirmed the IJ's conclusions under § 1003.1(e)(5). See id. at 715. The court attempted a meaningful review of the

IJ's decision, but was thwarted because the IJ provided no underlying determination regarding whether there was past persecution. See id. at 715-16. Thus, the Sixth Circuit remanded, stating: "Although the BIA need not write extensively on every issue–indeed, we have joined our sister circuits in holding that 'the BIA's streamlining procedures,' such as summary affirmances of IJ decisions, 'do not themselves alone violate an alien's right to due process,' Denko v. I.N.S., 351 F.3d 717, 730 (6th Cir. 2003)–the failure of the BIA to explain its decision in this case unnecessarily frustrates our review." Id. at 716.

Here, we face similar problems, in that the Board clearly affirmed the IJ's decision under § 1003.1(e)(5), but did not follow its own procedures pursuant to that section. Rather, its citation of cases is somewhat mystifying and does not allow us to provide a meaningful review of the Board's judgment. Given this situation, we may remand for clarification or for the Board to follow its own procedures, or we may consider the IJ's report, as did the Sixth Circuit in Gjyzi, to determine whether the IJ has provided an adequate basis for meaningful review. Cf. Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (Posner, J.) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."); Illinois v. ICC, 722 F.2d 1341, 1348 (7th Cir. 1983) (Posner, J.) (" Chenery [SEC v. Chenery Corp., 332 U.S. 194 (1947)] does

-7-

not require futile gestures."). In this case, we find that the IJ's report provides an adequate basis for our review.

## IV. The IJ's Decision

The IJ reviewed several cases and decided that petitioners had not defined a "particular social group" for purposes of asylum and withholding of removal under the INA. See Admin. R. at 148-51; see also 8 U.S.C. § 1101(a)(42)(A); §§ 1208.13(b)(1), 1208.16(b). What constitutes a particular social group is a pure question of law that we review de novo. Elien v. Ashcroft, 364 F.3d 392, 396 (1st Cir. 2004); Hernandez-Montiel v. INS, 225 F.3d 1084, 1091 (9th Cir. 2000).

The INA does not define the phrase "particular social group." Hernandez-Montiel, 225 F.3d at 1091. The term "comes directly from the United Nations Protocol Relating to the Status of Refugees . . . [but] [w]hen Congress ratified the Protocol on October 4, 1968, it did not shed any further light on the definition." Id. The Board has decided that a "particular social group" is "a group of persons all of whom share a common, immutable characteristic . . . that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." In re Acosta, 19 I. & N. Dec. 211, 233-34 (BIA 1985). The agency's reasonable interpretation of a statute it administers is entitled to deference. See Tapia Garcia v. INS, 237 F.3d 1216, 1220 (10th Cir. 2001) (discussing Chevron U.S.A., Inc. v.

-8-

Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984)). But the Board left it to be decided on a case-by-case basis what "particular kind of group characteristic . . . will qualify under this construction." Acosta, 19 I. & N. Dec. at 233.

The courts are struggling to set the parameters for the definition of a "particular social group" in light of Acosta. The circuit courts are not in agreement on a test. See Castellano-Chacon v. INS, 341 F.3d 533, 546-48 (6th Cir. 2003) (joining the First, Third, and Seventh Circuits in adopting the Board's immutability analysis, but noting that the Ninth and Second Circuits have settled on a different test from the Board and from each other).

This court has not yet addressed the question of what group characteristics qualify to define a particular social group. In this case, however, we can confidently state that petitioners cannot prevail under any of the circuit courts' tests. Being indebted to the same creditor (unscrupulous or not) is not the kind of group characteristic that a person either cannot change or should not be required to change. Indeed, petitioners' debt was settled by a court, which ordered them to pay their creditor back. Admin. R. at 146. As such, we need not adopt a particular test in this case, and we need not remand for the Board to clarify its reasoning.

V.  Petitioners' Claim for Relief Under the Convention Against Torture

"Article 3 of the Convention Against Torture prohibits the [return] of an alien to a country where it is more likely than not that he will be subject to torture by a public official, or at the instigation or with the acquiescence of such an official."  Matter of G-A- , 23 I. & N. Dec. 366, 367 (BIA 2002) (en banc) (citations omitted).  A claim under the CAT differs from a claim for asylum or withholding of removal under the INA because there is no requirement that the petitioners show that torture will occur on account of a statutorily protected ground.

The Board said nothing about petitioners' CAT claim except to advert to petitioners' failure to meet the standard for that relief.  The IJ, on the other hand, explicitly found petitioners credible when they testified that their lives have been threatened by Mr. Trejo and men who work for him.  Admin. R. at 147-48, 151.  But the IJ concluded that the threats were part of Mr. Trejo's private vendetta and were not made with the "acquiescence of any public official or person acting in a governmental position."  Id. at 153.  "Acquiescence of a public official requires that the public official, prior to the activity constituting the torture, have awareness of such activity and thereafter breach his or her legal responsibility to prevent such activity."  8 C.F.R. § 1208.18(a)(7).  However, "Congress made its intent clear that actual knowledge, or willful acceptance, is not required for a

government to 'acquiesce' to the torture of its citizens." Zheng v. Ashcroft, 332 F.3d 1186, 1193 (9th Cir. 2003). Rather, "[w]illful blindness suffices to prove acquiescence." Ontunez-Tursios v. Ashcroft, 303 F.3d 341, 354 (5th Cir. 2002) (quotations omitted).

Petitioners argue that the IJ erred by concluding that they failed to show government acquiescence in the torture they expect from Mr. Trejo if they return to Honduras. 8 U.S.C. § 1252(b)(4)(B) prescribes a deferential standard for judicial review of administrative findings, which "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."

We have reviewed petitioners' brief on the CAT issue and their cursory references to the administrative record. Petitioners produced evidence of corruption in the Honduran government and underfunding of police. They failed, however, to show that "any reasonable adjudicator," 8 U.S.C. § 1252(b)(4)(B), would be compelled to find a connection between Mr. Trejo and the Honduran government, or awareness by any public official that Mr. Trejo has threatened petitioners' lives. Therefore, we are not compelled to conclude that any actions that Mr. Trejo might take against petitioners will be with the acquiescence of the Honduran government.

The petition for review is denied.