**F I L E D**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JUAN PABLO SUAREZ-ROMERO,

Petitioner,

v.

ALBERTO R. GONZALES, Attorney General,[*]

Respondent.

No. 04-9557

(No. A 79-512-243)

(Petition for Review)

---

**ORDER AND JUDGMENT**[**]

---

Before **BRISCOE**, **ANDERSON**, and **BRORBY**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

---

[*]On February 4, 2005, Alberto R. Gonzales became the United States Attorney General. In accordance with Rule 43(c)(2) of the Federal Rules of Appellate Procedure, Mr. Gonzales is substituted for John Ashcroft as the Respondent in this action.

[**]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

argument.  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

Petitioner Juan Pablo Suarez-Romero petitions for review of the decisions of the Board of Immigration Appeals ("BIA") and the immigration judge ("IJ") denying his application for asylum, restriction on removal (formerly withholding of removal) under the Immigration and Nationality Act ("INA"), and protection under the Convention Against Torture ("CAT").  We affirm the denial of his petition.

## BACKGROUND

Suarez-Romero is a native and citizen of Colombia.  He entered the United States on August 15, 2000, as a temporary visitor and legally extended his stay until August 14, 2001.  He then overstayed his authorized extension and was found to be removable for that reason.  He filed a timely application for asylum and restriction on removal under the INA, as well as for protection under the CAT.  He asserted that he was a member of one or more particular social groups and that he was targeted for persecution because his father, Guillermo Suarez, was a retired career military officer and because both he and his father were involved, both as stockholders and otherwise, in various transportation companies.

Suarez-Romero testified that his life was normal until 1999. At that time, he said he saw a television program in which a guerilla organization, the ELN, threatened Suarez-Romero's father. Suarez-Romero's father showed him a letter he said he had received from the ELN, in which the ELN called for a "political judgment" against him. Admin. R. at 108-09, 302. When Suarez-Romero's father went to the police, he was given information about what to do in the event of an attempted kidnaping. Suarez-Romero stated that the military was "not helpful." Id. at 112.

Suarez-Romero testified that in December 1999, he was followed for fifteen minutes by a group of men in a taxi. He claims he ultimately evaded the men by driving into a military zone. He believed that they were guerillas attempting to kidnap him. He asserts he changed his daily routine following this incident, and "was very uneas[y] and afraid." Id. at 116. He further testified that his wife's father provided her with a personal bodyguard and that the stress of the situation ultimately led to his divorce. His parents, siblings, ex-wife and children have remained in Colombia. Suarez-Romero testified that his parents continually move to "different places" and that he uses a telephone ring code to contact them. Id. at 120. Suarez-Romero did not, however, mention the incident when he was followed by the taxi in either his asylum application or his asylum interview.

The IJ denied Suarez-Romero's application for asylum and for restriction on removal under the INA, and he also denied Suarez-Romero relief under the CAT. The IJ stated he was "concerned about [Suarez-Romero's] credibility." Oral Dec. of the Imm. J. at 7, Admin. R. at 69. In particular, the IJ noted that "[t]he asylum application submitted by [Suarez-Romero] does not mention the central events testified to" by him, id., nor did he mention the incident when he was allegedly followed by men in a taxi in his interview with the asylum officer. These failures, in turn, undermined the credibility of his testimony at the hearing and "[led] the Court to believe that [Suarez-Romero] may have recently fabricated" them to support his claims. Oral Dec. at 8, id. at 70. The IJ further stated that, assuming Suarez-Romero has shown that he belongs to a particular social group, he nonetheless failed to show that he meets the definition of a refugee because he failed to show that the Colombian government is unwilling or unable to protect him. In support of this conclusion the IJ noted that, because Suarez-Romero was "from a well-connected family" and because his father was a "senior military officer," "[i]t's to be expected that the government in Colombia would be able to assign some resources to [Suarez-Romero] for his protection or for the protection of [his] family." Oral Dec. at 9-10, id. at 71-72. The IJ also reasoned that the fact that Suarez-Romero's family, particularly his father,

-4-

remained in Colombia "would militate against a finding that [Suarez-Romero's] fear of persecution is a reasonable fear." Oral Dec. at 10, id. at 72.

A single member of the BIA, acting on behalf of the Board, affirmed the IJ's decision pursuant to 8 C.F.R. § 1003.1(e)(5).[1] The Board concluded that the IJ's "factual findings, including his adverse credibility finding, are not clearly erroneous." Order at 1, Admin. R. at 2. The Board further held that:

> the [IJ] correctly concluded that the evidence presented by [Suarez-Romero] is insufficient to establish that he has a well-founded fear of persecution on account of an enumerated ground if he is returned to Colombia. [Suarez-Romero's] fears arise primarily from his membership in a family unit and his family members remaining in Colombia, including his father who was the focus of the alleged threat by guerillas, have not been harmed. Contrary to [Suarez-Romero's] suggestion that his father is in hiding, his father continues to live in one of the family homes where [Suarez-Romero] is able to routinely contact him. Moreover, [Suarez-Romero's] speculation that he was personally the subject of an attempted kidnaping is not entitled to great weight based on the specific facts set forth by [Suarez-Romero] concerning the event.

Id. (citations omitted).

Suarez-Romero appeals, arguing: (1) the Board erred in deferring to the IJ's adverse credibility determination because that determination was based on

---

[1] 8 C.F.R. § 1003.1(e)(5) provides in pertinent part as follows:

If the Board member to whom an appeal is assigned determines, upon consideration of the merits, that the decision is not appropriate for affirmance without opinion, the Board member shall issue a brief order affirming, modifying, or remanding the decision under review . . . .

omissions and discrepancies that either did not exist or that were explained by Suarez-Romero; (2) the Board erred in deferring to the IJ's adverse credibility determination because that determination was based on an unreasonable expectation that the letter threatening Suarez-Romero's father be authenticated; (3) the Board erred in deferring to the IJ's adverse credibility determination because that determination was based on omissions and discrepancies in Suarez-Romero's asylum interview; (4) the Board erred in deferring to the IJ's adverse credibility determination because that finding was based on speculation that Suarez-Romero should have received protection from the government; (5) the Board's determination that Suarez-Romero's family remained unharmed in Colombia was not supported by substantial evidence, and (6) the Board's determination that Suarez-Romero's story of an attempted kidnaping was not entitled to great weight and he therefore did not prove a well-founded fear of persecution was not supported by reasonable, substantial, or probative evidence.

## DISCUSSION

As indicated, the Board affirmed the IJ's decision under 8 C.F.R. § 1003.1(e)(5), which permits a single Board member to "issue a brief order affirming" the IJ's decision. Suarez-Romero argues the Board's decision was "without analysis," Pet'r's Op. Br. at 14, and that the IJ's decision is therefore the

final agency action that we review. The government argues that we simply review the Board's decision under the usual standards. Because we find the Board's decision to be somewhat sparse in the details of its analysis, we examine the IJ's decision as that of the agency providing "an adequate basis for our review." Cruz-Funez v. Gonzales, 406 F.3d 1187, 1191 (10th Cir. 2005).

"We review the [IJ's] legal determinations de novo, and its findings of fact under a substantial-evidence standard." Niang v. Gonzales, 422 F.3d 1187, 1196 (10th Cir. 2005); see also Elzour v. Ashcroft, 378 F.3d 1143, 1150 (10th Cir. 2004). In applying the substantial-evidence standard, "our duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole." Niang, 422 F.3d at 1196 (further quotation omitted). "The [IJ's] findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." Yuk v. Ashcroft, 355 F.3d 1222, 1233 (10th Cir. 2004) (further quotation omitted). We have never held, however, that the IJ or the BIA is bound to follow a rigid structure in analyzing an applicant's claims.

"The IJ's credibility determinations, like other findings of fact, are subject to the substantial evidence test." Elzour, 378 F.3d at 1150. More particularly, "we have held that in order to determine that an alien is not a credible witness, the IJ must give specific, cogent reasons for disbelieving his or her testimony."

Id. (further quotation omitted); see also Sviridov v. Ashcroft, 358 F.3d 722, 727 (10th Cir. 2004). "Finally, our review is confined to the reasoning given by the IJ, and we will not independently search the record for alternative bases to affirm." Elzour, 378 F.3d at 1150.

Because Suarez-Romero was noticed to appear after April 1, 1997, this appeal is governed by the permanent rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009 (Sept. 30, 1996). See Tsevegmid v. Ashcroft, 336 F.3d 1231, 1234 n.3 (10th Cir. 2003). Suarez-Romero seeks asylum, restriction on removal and protection under the CAT.[2]

"A request for asylum involves a two-step process." Yuk, 355 F.3d at 1232 (further quotation omitted). The applicant must first show eligibility for asylum by establishing that he is a refugee. See id. A refugee is defined as someone "outside his . . . country of nationality and 'unable or unwilling to return to . . . that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group or political opinion.'" Elzour, 378 F.3d at 1149 (quoting 8 U.S.C.

---

[2]While he asserts that he appeals the BIA's decision denying his petition for asylum, or restriction on removal and protection under the CAT, he develops no specific arguments in his brief on any claim except his petition for asylum. We accordingly hold those other claims are waived.

§§ 1101(a)(42)(A), 1158(b)(1)).  A showing of past persecution creates a rebuttable presumption of a well-founded fear of future persecution.  Wiransane v. Ashcroft, 366 F.3d 889, 893 (10th Cir. 2004).  If an applicant bases his claim on a well-founded fear of future persecution, he must show objectively that the fear is reasonable and subjectively that the fear exists.  Id.  Even if the applicant satisfies the definition of refugee, however, the Attorney General still has discretion, at the second step, to either grant or deny asylum.  See Yuk, 355 F.3d at 1233.  In this case, the IJ and the BIA determined, at the first step, that Suarez-Romero failed to establish that he was a refugee and was therefore ineligible for asylum.

The IJ began by noting that, while the letter from the ELN threatening a "political judgment" against Suarez-Romero's father provided some corroboration for his claim that his father was subject to persecution, the letter was of dubious authenticity.  The IJ explained that the letter was undated and contained "no indicia of authenticity."  Oral Dec. at 6, Admin. R. at 68.  Further, Suarez-Romero's testimony about the letter did nothing to verify the letter's authenticity.  The IJ accordingly concluded that it "cannot find that that letter is substantial corroboration for" Suarez-Romero's claims.  Oral Dec. at 7, id. at 69.  We find no fault with the IJ's reluctance to give much credence to the letter.

Additionally, the IJ found Suarez-Romero's testimony not credible on various points. The IJ gave "specific, cogent" reasons for disbelieving Suarez-Romero. One reason the IJ gave for finding Suarez-Romero not credible was that he failed to allege the events central to his request for asylum—the letter from the ELN specifically threatening his father and the incident where men in a taxi followed him—in his asylum application or in his asylum interview. The application references "threats" and the "Political Judgment" threatened against his father, but nothing more specific, and, in particular, nothing more specific involving him. We have held that "[a]n IJ's adverse credibility determination may appropriately be based upon such factors as inconsistencies in the witness' testimony, lack of sufficient detail, or implausibility." Elzour, 378 F.3d at 1152.

Further, the IJ rejected as unconvincing Suarez-Romero's explanation for the omissions from his asylum application, noting that Suarez-Romero "had two opportunities to mention having been followed by the guerillas in Colombia, and he failed to do so" and further noting that the person who helped Suarez-Romero prepare his asylum application "obtained a great deal of other information from the respondent." Oral Dec. at 8, Admin. R. at 70.

The IJ also explained that Suarez-Romero's failure to mention the incident involving the men in the taxi, or the threats against his family, to the asylum officer "leads the Court to believe that [Suarez-Romero] may have recently

-10-

fabricated them as part of his claim." Id.  The IJ therefore adequately explained his reasons for finding Suarez-Romero not credible with respect to his claim that he had been the victim of an attempted kidnaping and that his family was seriously threatened with harm.

With respect to his fear of persecution, the IJ noted that the fact that Suarez-Romero's family, "especially his father . . . remain in Colombia would militate against a finding that the respondent's fear of persecution is a reasonable fear." Oral Dec. at 10, id. at 72.  We have on previous occasions noted that the fact that an applicant's family remains unharmed in the country where the applicant claims he has experienced persecution or has a well-founded fear of future persecution undermines the credibility of the claimed persecution. See Yuk, 355 F.3d at 1234.[3]  Suarez-Romero argues that there is insufficient evidence supporting the conclusion that his family remains unharmed.  To the contrary, Suarez-Romero presented no evidence that any family members were in fact the victims of persecution other than an unsupported assertion that his parents moved to "different places."  He testified that his father still owned two homes in Colombia and that Suarez-Romero was able to contact his father regularly.   There

---

[3]The IJ observed that Suarez-Romero's family "remains" in Colombia.  The Board amplified this slightly, noting that the family remains "unharmed" in Colombia.

-11-

is no evidence in this record that would compel any reasonable adjudicator to conclude that Suarez-Romero's family has suffered any harm.

Suarez-Romero argues that the IJ erred when he held that Suarez-Romero had not shown that the Colombian government was unwilling or unable to protect him. He argues the IJ impermissibly speculated that, because Suarez-Romero's family was "well-connected" and his father was a career military person, "[i]t's to be expected that the government . . . would be able to assign some resources" to Suarez-Romero and his family. Oral Dec. at 9, Admin. R. at 71. While the IJ's speculation on this point does not assist us in our task of reviewing the adequacy of the IJ's reasoning, we also note that the IJ, at bottom, simply pointed out Suarez-Romero's failure to carry his burden of proving that the government was unwilling or unable to protect him. The IJ found Suarez-Romero's testimony not credible because it defied common sense. While IJ's should not speculate, they also need not abandon their common sense.

Finally, Suarez-Romero argues that the IJ erred in finding he failed to show a well-founded fear of persecution based upon the incident involving the men in the taxi briefly following him. As indicated, the IJ adequately explained why he found Suarez-Romero's allegations about this incident not credible. That is all that is required.

-12-

For the foregoing reasons, we AFFIRM the denial of Suarez-Romero's petition.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge