**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DORIS ABIGAIL MARTINEZ-
MENDOZA,

      Petitioner,

v.

WILLIAM P. BARR, United States
Attorney General,

      Respondent.

No. 19-9506
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **McHUGH**, and **EID**, Circuit Judges.
_____

Doris Abigail Martinez-Mendoza, a native of El Salvador, petitions for review

of an order by the Board of Immigration Appeals (BIA) affirming a decision by the

Immigration Judge (IJ) denying relief under the Convention Against Torture (CAT).

Exercising jurisdiction under 8 U.S.C. § 1252(a), we grant the petition and remand

the matter to the BIA for further proceedings consistent with this opinion.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

**BACKGROUND**

In November 2012, ten-year-old Abigail left El Salvador with her seventeen-year-old sister, Katherine, and traveled to the United States, seeking to join their parents, who lived in Utah and had come to the United States illegally several years beforehand. After being apprehended and placed in removal proceedings, both sisters applied for asylum, withholding of removal, and relief under the CAT.

Nearly five years later, on September 14, 2017, the sisters' claims were heard before an IJ. Although the cases initially were consolidated, the IJ administratively closed Katherine's case and severed it from Abigail's after their counsel submitted evidence that Katherine had married a United States citizen and had initiated proceedings to obtain adjusted status based on the marriage. The hearing, therefore, proceeded solely as to Abigail, though Katherine provided the majority of the testimony.

Katherine testified that their mother left El Salvador for the United States in 2006 and that their father did the same in 2008. She and Abigail continued to live in El Salvador, residing alone in their parents' home. Several months later, however, the girls returned home from school and found the residence ransacked and many of their belongings stolen. The police responded but did not find the perpetrators.

Believing it was no longer safe to live alone, Katherine and Abigail moved in with their aunt, who lived nearby. Shortly thereafter, their uncle, who lived next door and was a father figure for the girls, was shot and killed outside his home. The

2

police, who did not have a station in that city, took about one hour to arrive, did not question Katherine, and were unsuccessful in solving the murder. Katherine believed gang members orchestrated the murder because their uncle had confronted a local gang member several days beforehand and protested the gang's extortionist practices.

After their uncle's murder, Katherine and Abigail continued living with their aunt for the next two years. During that time, Katherine believed people on the bus were watching and following her. Additionally, an unidentified man stood at the site of their uncle's murder and asked Katherine for money on a nearly daily basis. Katherine gave him money based on their aunt's recommendation and her own belief that she would be harmed otherwise. The aunt similarly paid protection money to the gangs and warned Katherine she might get killed if she told the police. Katherine believed that the police were powerless to stop the gangs and that the gangs could do anything they wanted in El Salvador.

After the sisters left El Salvador, their aunt received a phone call demanding payment but responded that she did not have any money and that the girls no longer lived with her. Katherine believed Abigail would be in danger if sent back to El Salvador because gang members would believe she has money.

Because of her young age and her family's efforts to shield her, Abigail was unaware while living in El Salvador of the extortion payments, the reason for their uncle's murder, or the family's fear of the gangs. But she testified she is afraid to return to El Salvador. Abigail also testified that she would live with her aunt again if

3

forced to return but that she does not believe her aunt could provide adequate protection because of her age, health issues, and obligations to her own children.

The IJ found Katherine credible[1] but denied Abigail's requests for asylum, withholding of removal, and relief under the CAT. Abigail appealed to the BIA, but because her brief only contested the denial of relief under the CAT, the BIA concluded she had waived her claims for asylum and withholding.[2] After finding no clear error in the IJ's denial of relief under the CAT, the BIA dismissed the appeal.

## DISCUSSION

On appeal, Abigail contends the BIA erred in denying relief under the CAT. Because we are unable to perform a meaningful review, we remand to the BIA.

## A.   Standard of Review

When, as here, the BIA affirms the IJ in a brief order issued by a single judge, "we review the BIA's decision as the final agency determination and limit our review to issues specifically addressed therein." *Diallo v. Gonzales*, 447 F.3d 1274, 1279

---

[1] The IJ did not make a credibility finding regarding Abigail. *See* 8 U.S.C. § 1158(b)(1)(B)(iii) (providing, for asylum applications, that "if no adverse credibility determination is explicitly made, the applicant or witness shall have a rebuttable presumption of credibility on appeal"); *id.* § 1229a(c)(4)(C) (providing same presumption for applications for relief from removal).

[2] We note any claims of ineffective assistance of counsel should be raised in "a motion to reopen the case before the BIA." *Galvez Piñeda v. Gonzales*, 427 F.3d 833, 837 (10th Cir. 2005). *See generally Osei v. I.N.S.*, 305 F.3d 1205, 1209 n.2 (10th Cir. 2002) (discussing the preliminary requirements for such a claim under *In re Lozada*, 19 I. & N. Dec. 637 (BIA 1988), including: (1) providing a supporting affidavit; (2) allowing former counsel the opportunity to respond; and (3) indicating whether a disciplinary complaint has been filed).

(10th Cir. 2006). "However, when seeking to understand the grounds provided by the BIA, we are not precluded from consulting the IJ's more complete explanation of those same grounds." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006). "We review the BIA's legal determinations de novo, and its findings of fact under a substantial-evidence standard." *Niang v. Gonzales*, 422 F.3d 1187, 1196 (10th Cir. 2005); *see also Htun v. Lynch*, 818 F.3d 1111, 1118 (10th Cir. 2016) ("[A] request for protection under the CAT involves factual determinations reviewed for substantial evidence."). Under the substantial-evidence standard, "[t]he BIA's findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." *Niang*, 422 F.3d at 1196 (internal quotation marks omitted).

## B. Relief Under the CAT

To obtain relief from removal under the CAT, a petitioner must "prove it is more likely than not that . . . she would be tortured if removed to a particular country." *Hayrapetyan v. Mukasey*, 534 F.3d 1330, 1336 (10th Cir. 2008) (internal quotation marks omitted). The CAT defines "torture" as the "intentional[] inflict[ion]" of "severe pain or suffering, whether physical or mental, . . . by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1).

## C. Meaningful Review

In order for this court to engage in "meaningful appellate review," the BIA must "consider the issues raised[] and announce its decision in terms sufficient to

5

enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Maatougui v. Holder*, 738 F.3d 1230, 1243 (10th Cir. 2013) (internal quotation marks omitted). "The BIA is not required to write an exegesis on every contention," *id.* at 1242-43 (internal quotation marks omitted), or "discuss every piece of evidence," *Hadjimehdigholi v. I.N.S.*, 49 F.3d 642, 648 n.2 (10th Cir. 1995). However, neither may it "ignore or misconstrue evidence." *Karki v. Holder*, 715 F.3d 792, 800 (10th Cir. 2013) (internal quotation marks omitted).

Here, the BIA stated it was "sympathetic to [Abigail]" but found the IJ had not clearly erred in determining Abigail was "ineligible for protection under the [CAT]." R. at 3-4. The IJ similarly expressed sympathy, stating he "recognize[d] the unfortunate consequence of removal on" Abigail, "a minor" with "limited support in El Salvador." *Id.* at 51. Notwithstanding these statements, the record does not show the BIA and the IJ provided an individualized assessment of Abigail's case.

First, the BIA seems to have confused the two sisters. For example, the BIA noted that "[t]he respondent testified" about the burglary of her family home, her uncle's murder, and the demands for "money when she went to school." *Id.* at 3. But it was *Katherine* who provided such testimony, not Abigail, and indeed, the BIA cited the transcript pages containing *Katherine's* testimony. *See id.*[3]

---

[3] This may be attributable to the brief her attorney filed. In addition to contending "*Respondents* should be granted withholding of removal," R. at 17 (emphasis added), the brief repeatedly attributed Katherine's testimony to Abigail, *see, e.g.*, *id.* (stating "she detailed multiple occasions of being the victim of crimes such as robbery, stalking, and death threats"). *See generally supra* note 2.

6

We may look to the IJ's decision for clarification. *See Cruz-Funez v. Gonzales*, 406 F.3d 1187, 1191 (10th Cir. 2005). But that decision often referred to "Respondents," including stating "*Respondents'* application for asylum, withholding of removal, and relief under the [CAT] will be denied," even though Katherine's case was closed and severed from Abigail's. R. at 42 (emphasis added); *see also id.* at 51 (denying "*Respondents'* application for asylum," "*Respondents'* application for withholding of removal," and "*Respondents'* applications for withholding and deferral of removal under the [CAT]," and ordering the removal of "*Respondents*" (emphasis added)). The IJ's decision also specified Katherine "was the *only* witness to provide testimony." *Id.* at 43 (emphasis added). Not so. Katherine provided the bulk of the testimony, *see id.* at 136-67, but Abigail also testified, *see id.* at 169-74. And in describing "Respondent's testimony," it is clear the IJ, like the BIA, was referring to *Katherine*, not Abigail. *Id.* at 50 (noting "Respondent's prior interactions with the gang," although only Katherine had any such interactions).

Ultimately, the record shows that Abigail's sister and aunt were extorted by gangs and that Abigail's uncle was murdered after confronting a gang member about the extortionist practices. The record further indicates that Abigail, now seventeen, has not lived in El Salvador since she was ten and has virtually no connections there or support awaiting her should she be deported. Indeed, Katherine testified Abigail would be particularly vulnerable, noting that there was no one who could protect her and that the gangs likely will believe she has money due to her being both new in town and a teenager who just returned from the United States. *See id.* at 151-52.

7

Confusing or conflating the two sisters is problematic because of their different experiences and different fears. Focusing, as the BIA did, on "past mistreatment" and "past torture," *id.* at 3, may make sense for Katherine, *see Niang v. Gonzales*, 422 F.3d 1187, 1196 (10th Cir. 2005) (noting past torture is relevant, although not dispositive, for future torture), but not for Abigail, who was largely shielded from the dangers in El Salvador, *see* R. at 147. Abigail's CAT claim requires an assessment of whether "it is more likely than not . . . she *would be* tortured if removed to [El Salvador]." 8 C.F.R. § 208.16(c)(2) (emphasis added). And unlike past mistreatment, the BIA gave little attention to future mistreatment, merely reciting the standard and not mentioning the evidence. *See* R. at 4.

The IJ and BIA erred in failing to distinguish Abigail from her sister, to acknowledge Abigail testified at her own hearing, and to independently assess Abigail's request for relief. On remand, the BIA should clarify its ruling. We express no opinion on the merits of Abigail's CAT claim, only that she is entitled to a fundamentally fair proceeding with "an individualized determination of [her] interests." *de la Llana-Castellon v. I.N.S.*, 16 F.3d 1093, 1096 (10th Cir. 1994).

## CONCLUSION

The petition for review is granted and the matter is remanded to the BIA for further proceedings consistent herewith.

Entered for the Court

Gregory A. Phillips
Circuit Judge

8