FILED
United States Court of Appeals
Tenth Circuit

April 17, 2020

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JOSE DEL CARMEN HERNANDEZ
ROSALES,

      Petitioner,

v.

WILLIAM P. BARR, United States
Attorney General,

      Respondent.

No. 19-9564
(Petition for Review)

_____

**ORDER AND JUDGMENT***
_____

Before **BRISCOE**, **BALDOCK**, and **KELLY**, Circuit Judges.
_____

Jose Del Hernandez Rosales, a native and citizen of Mexico, petitions for

review of the Board of Immigration Appeals's (BIA) decision dismissing his appeal

from the Immigration Judge's (IJ) denial of asylum, withholding of removal, and

protection under the Convention Against Torture (CAT).  Exercising jurisdiction

under 8 U.S.C. § 1252(a), we deny the petition for review.

---

    * After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

# I. BACKGROUND

In 2015, Petitioner applied for admission into the United States at a port-of-entry without a valid visa or other entry documents. An asylum officer determined Petitioner had credible fear of returning to Mexico and he was placed in removal proceedings. Eventually, Petitioner conceded removability and applied for asylum, withholding of removal, and CAT protection.

Petitioner's request for asylum and withholding of removal is based on membership in a particular social group: "Long-term residents of the United States who have to return to Mexico and who have family in the United States." Admin. R. at 97. More particularly, Petitioner maintains he is at a heightened risk of being kidnapped or tortured if he returns to Mexico under the theory that criminal elements target Mexicans with relatives living in the United States who likely have the financial resources to pay a ransom.

At the merits hearing, Petitioner testified that he married a United States citizen in 2006 and lived off and on in the United States from 1992 through 2011—albeit without legal status. According to Petitioner, not long after his nephew was kidnapped and held for a ransom that was eventually paid by family members living in the United States, he received a telephone call from a man who demanded $2000 or he would suffer a fate worse than what happened to his nephew. Petitioner said the man knew his wife lived in the United States and could pay the money. Not long after the call, some men approached Petitioner late at night while he was working at a

food truck and demanded the $2000. When Petitioner said he did not know what they were talking about, they hit him in the face and robbed him of 800 Mexican pesos. Then, one of the assailants put a gun in Petitioner's face and told him if he did not have the rest of the money the next day, he would kill him. Just a few hours later, Petitioner grabbed his wallet, passport, and medications, and took a taxi from Tijuana to the United States border, where he told immigration officials that he was afraid to return to Mexico.

The IJ found Petitioner's testimony credible but concluded he had not carried his burden of proving he was eligible for asylum, withholding of removal, or protection under the CAT. The BIA dismissed Petitioner's appeal. This petition for review followed.

## II. DISCUSSION

**A.** *Scope and Standard of Review*

A single-member BIA order "constitutes the final order of removal," and "we will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in its affirmance." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006). "However, when seeking to understand the grounds provided by the BIA, we are not precluded from consulting the IJ's more complete explanation of those same grounds." *Id.* For example, we will consult the IJ's decision "where the BIA incorporates by reference the IJ's rationale or repeats a condensed version of its reasons while also relying on the IJ's more complete discussion" or "where the BIA

3

reasoning is difficult to discern and the IJ's analysis is all that can give substance to the BIA's reasoning in the order of affirmance." *Id.*

We review the BIA's legal conclusions de novo and its factual findings for substantial evidence. *See Rivera-Barrientos v. Holder*, 666 F.3d 641, 645 (10th Cir. 2012). Under the substantial-evidence standard, "the BIA's findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (brackets and internal quotation marks omitted).

## B. *Asylum and Withholding of Removal*

To succeed in his application for asylum and withholding of removal, Petitioner must prove he is eligible for this relief. *See Rodas-Orellana v. Holder*, 780 F.3d 982, 986 (10th Cir. 2015). As an initial matter, to be eligible for asylum, Petitioner must prove he is a refugee, which requires Petitioner to establish he is unable or unwilling to return to his country of nationality "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). For withholding, he must prove a "clear probability of persecution on account of" one of the statutorily protected grounds. *Rodas-Orellana*, 780 F.3d at 987 (internal quotation marks omitted). In other words, to obtain either form of relief, Petitioner must show persecution *on account of a statutorily protected ground*. Because Petitioner's proposed social group fails, we need not consider persecution.

4

"What constitutes a particular social group is a pure question of law that we review de novo." *Cruz-Funez v. Gonzales*, 406 F.3d 1187, 1191 (10th Cir. 2005). Because "Congress did not define the term 'particular social group,'" the court "owe[s] deference to the BIA's interpretation of that phrase, provided the interpretation is reasonable." *Rodas-Orellana*, 780 F.3d at 990. "[A]n applicant for asylum or withholding of removal seeking relief based on membership in a particular social group must establish that the group is (1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (BIA 2014) (internal quotation marks omitted). Regarding the second prong— the particularity requirement—the group cannot be "broadly defined with ambiguous terms," but must contain clearly definable limiting traits, that are "susceptible to easy definition." *Rivera Barrientos v. Holder*, 666 F.3d 641, 650 (10th Cir. 2012).

Specifically, "[d]eportees are too broad and diverse a group to satisfy the particularity requirement for a particular social group[,]" because this "purported social group could include men, women, and children of all ages[,] [not to mention the fact that] [t]heir removal from the United States could be based on numerous different factors." *Matter of W-G-R-*, 26 I. & N. Dec. 208, 223 (BIA 2014). Further, "[t]he length of time they were in the United States, the recency of their removal, and societal views on how long a person is considered a deportee after repatriation could vary immensely." *Id.* As such, the BIA held that "deportees lack the particularity required to make them a cognizable social group." *Id.*; *see also Matter of A-B-*, 27 I.

5

& N. Dec. 316, 336 (AG 2018) ("A particular social group must not be amorphous, overbroad, diffuse, or subjective, and not every immutable characteristic is sufficiently precise to define a particular social group.").

The IJ found Petitioner is a member of a social group that shares a common immutable characteristic—they have lived in the United States for a long time. However, the IJ found Petitioner's proposed social group failed the particularity requirement because, like the proposed group in *Matter of W-G-R-*, it was too diverse and overbroad: "Long-term residents in this country who have to return [to Mexico] with family ties could include men, women and children of any and all ages. It could include men, women, and children of different social and economic backgrounds." Admin. R. at 66.

The BIA agreed with the IJ that Petitioner's "proposed social group is not cognizable for asylum purposes because it lacks particularity and clearly defined boundaries." *Id*. at 4. For example, the BIA noted "[t]he membership of [Petitioner's] proposed group could include virtually anyone deported from the United States who might be thought to be worth robbing or extorting, and is too broad and amorphous to constitute a distinct class of persons within Mexican society." *Id*.

Petitioner argues the BIA's reliance on *Matter of W-G-R-* is misplaced because his group includes more than deportees, e.g., people who voluntarily return to Mexico. We agree with the government that the BIA "did not characterize his group as 'deportees' but *likened* [Petitioner's] group to deportees." Resp't Br. at 27. But

6

more to the point, Petitioner's argument does not actually help him because it broadens—not narrows—who is a member of the group.

We agree with the BIA that Petitioner's proposed social group is not defined with particularity.

## C. *CAT Protection*

Protection under the CAT requires Petitioner to show "that it is more likely than not that he . . . would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). This torture must be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." § 1208.18(a)(1). Willful blindness is the standard for establishing acquiescence. *See Cruz-Funez*, 406 F.3d at 1192. Unlike asylum or withholding of removal, however, CAT protection does not require Petitioner to show that torture will occur on account of a statutorily protected ground. *See id.*

The BIA affirmed the IJ's denial of CAT relief, agreeing with the IJ "that the record does not establish that it is more likely than not that the respondent will be tortured in Mexico by or with the acquiescence of willful blindness of a public official or other person acting in an official capacity." Admin. R. at 4. In this regard, the BIA explained that the IJ "correctly found that the testimony of [Petitioner's] expert witness concerning the likelihood of future criminal victimization was substantially undermined by [the expert's] testimony that only seven percent of returning migrants are subject to kidnapping and victimization by criminal organization operating in Mexico." *Id.* The BIA also referenced the IJ's

7

additional finding that no other similarly-situated family members had been harmed since Petitioner's nephew had been kidnapped. As the IJ noted in his decision, there was no evidence that "the [Petitioner's] nephew who was, at one point kidnapped and released [or Petitioner's] sisters who still live in Mexico, . . . have been subject to targeting from the cartels since the kidnapping. And they all have ties to this country." *Id*. at 68.

The IJ likewise considered whether the government of Mexico would "acquiesce in the torture of its citizens." *Id*. Based on the evidence, including the "United States State Department's 2015 International Narcotics Strategy Report regarding Mexico," *id*., the IJ found that "the government of Mexico does not, in fact, acquiesce in torture of its citizens because of the efforts it is making to combat the criminal organizations that are causing harm in their country," *id*. at 69. The BIA agreed with the IJ's finding and further noted that "[a] lack of success or inability to provide complete protection does not establish acquiescence to torture." *Id*. at 4; *see Ferry v. Gonzales*, 457 F.3d 1117, 1131 (10th Cir. 2006) (no acquiescence where the government takes steps to protect individuals or takes actions to improve conditions).

The BIA's determination that Petitioner failed to meet his burden to show that it is more likely than not he would be tortured upon his return to Mexico and that public officials would acquiesce in his torture is supported by substantial evidence. In other words, no reasonable adjudicator would be compelled to reach a contrary conclusion. *See Rivera-Barrientos*, 666 F.3d at 645.

## III.  CONCLUSION

The petition for review is denied.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge