**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 11, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

FLORA CHUMPITAZ-MORALES;
D.S.T.C.,

      Petitioners,

v.

PAMELA J. BONDI, United States
Attorney General,

      Respondent.

No. 25-9527
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **CARSON**, **BALDOCK**, and **KELLY**, Circuit Judges.
_____

Flora Natali Chumpitaz-Morales, proceeding pro se on behalf of herself and her minor daughter, petitions for review of the Board of Immigration Appeals (BIA)'s final order of removal. We have jurisdiction under 8 U.S.C. § 1252(a) and deny the petition.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. Background

Ms. Chumpitaz-Morales and her daughter, both natives and citizens of Peru, entered the United States without inspection in August 2022. After an Immigration Judge (IJ) found them inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i), they applied for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). Another IJ held a hearing on January 29, 2024, at which Ms. Chumpitaz-Morales represented herself and testified. The IJ summarized her testimony as follows:

> Since 2017 [Ms. Chumpitaz-Morales] . . . engaged in a very economically successful salon business with her father as a partner in Comas, Lima, Peru. Her father was very active in their community. Additionally, he was the driver for the mayor. He died from COVID-19 on March 8, 2021. In 2018, while her father was still living, their business was threatened for money in exchange for the business to function free of harassment. Her father paid the money. She and her father had thought that the threats were due to his job as a driver for the mayor. However, the threats continued even after his death. Since his death she has received two threatening notes. Sometime in February 2022, two armed men, whom she had not seen before, entered her business and demanded more money. She did not pay them. She instead went to the police and reported the incident. . . . The police said they would look into it, but she never checked back with them. She did not know who these men were or their greater affiliation if they had any, such as gang, organized crime or police. She believes these people are criminals.

> She believes her business was targeted because it is in a dense commercial zone and it is successful, although other businesses were also harassed for money. She believes the men just want money. [Ms. Chumpitaz-Morales] has not attempted to relocate in Peru because she does not have the ability to do that, and she believes she would be harassed anywhere she goes in Peru. Neither she nor her child have been physically harmed.

> She fears the mayor and intimated that he is corrupt. [She] did not name any government officials by name who had threatened or harmed her or were specifically involved in the threats she received.

2

R. at 57.

The IJ found petitioners ineligible for asylum, and therefore also found they had not met the higher burden of proof for withholding of removal. The IJ also denied their application for CAT protection. Petitioners appealed to the BIA, which upheld the IJ's rulings and rejected petitioners' claim they were denied due process. They now petition for our review of the BIA's decision.[1]

## II. Standard of Review

Because a single BIA member provided a reasoned decision in a brief order under 8 C.F.R. § 1003.1(e)(5), we review the BIA's decision but may consult the IJ's more complete explanation of the BIA's grounds. *Jimenez v. Bondi*, 156 F.4th 1037, 1044 (10th Cir. 2025). We review legal determinations de novo and findings of fact for substantial evidence. *O.C.V. v. Bondi*, 153 F.4th 974, 982 (10th Cir. 2025). Under the substantial evidence standard, "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.*

## III. Discussion

### A. Due Process

Initially, we are not persuaded by petitioners' claim they were denied due process. Ms. Chumpitaz-Morales states she suffered a panic attack during her hearing before the IJ and argues that her mental distress and language barriers

---

[1] Although she was represented in her appeal to the BIA, Ms. Chumpitaz-Morales proceeds without a lawyer in this appeal, as she did before the IJ. We construe her filings liberally, but we do not act as her advocate. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

prevented her from effectively representing herself. However, she does not contest the BIA's observation that in earlier proceedings the IJ had "properly informed [her] of her right to obtain counsel at her own expense and provided her with a list of free and low-cost legal providers," and also "provided continuances for [her] to secure counsel and to prepare her asylum application." R. at 4. We therefore affirm the BIA's ruling that Ms. Chumpitaz-Morales "was provided sufficient time and opportunity to find legal representation." *Id.* She states she could not afford to pay an attorney. But although respondents in removal proceedings have the right to be represented by an attorney, "there's no mechanism for the government to pay the attorney. So noncitizens must hire their own attorneys." *Chavez-Govea v. Bondi,* 147 F.4th 1231, 1235 (10th Cir. 2025) (citation omitted).

Moreover, to prevail on their due process claim, petitioners would need to "identify evidence that the IJ should have elicited that would have altered the BIA's finding[s]." *Matumona v. Barr*, 945 F.3d 1294, 1304 (10th Cir. 2019). Petitioners have not identified any testimony or evidence they would present, beyond what the IJ already elicited and considered. We therefore reject their due process claim.

## B. Asylum

To be eligible for asylum, applicants must demonstrate "'that they are unable or unwilling to return' to the applicant's country of nationality . . . 'because of persecution or a well-founded fear of persecution *on account of race, religion, nationality, membership in a particular social group, or political opinion*." *Miguel-Peña v. Garland*, 94 F.4th 1145, 1159 (10th Cir.) (emphasis added) (quoting 8 U.S.C.

4

§ 1101(a)(42), *cert. denied*, 145 S. Ct. 545 (2024)). "These five categories are called protected grounds." *Id.* (internal quotation marks omitted). To be eligible for asylum, an "applicant must establish [a protected ground] was at least one central reason for the persecution." *Jimenez*, 156 F.4th at 1046 (internal quotation marks omitted).

The BIA, upholding the IJ's findings, concluded petitioners were ineligible for asylum because they were "targeted for extortion simply for financial gain and not on account of . . . family membership or any other protected ground." R. at 4–5. This is a factual finding reviewed for substantial evidence. *Miguel-Peña*, 94 F.4th at 1159.[2]

Ms. Chumpitaz-Morales maintains she and her daughter were targeted because of her father's opposition to political corruption. However, when the IJ asked why she thought they were targeted, she testified it was because her business was in "a very commercial district," and "yielded a lot," and the individuals who threatened her "saw that we were doing well." R. at 161. She also testified that while other

---

[2] The IJ found petitioners "did not establish past persecution." R. at 60. The BIA concluded they "had not meaningfully challenged" that conclusion and "therefore waived that issue." R. at 4. Because we agree with the government that this issue was not exhausted before the BIA, and because petitioners' brief does not challenge the BIA's conclusion that it was waived, we do not consider whether petitioners suffered past persecution. *See Miguel-Peña*, 94 F.4th at 1155 ("We enforce the exhaustion requirement [of 8 U.S.C. § 1252(d)(1)] by declining to consider the unexhausted issue."); *see also Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[T]he omission of an issue in an opening brief generally forfeits appellate consideration of that issue."). Our discussion is therefore addressed only to whether they have a well-founded fear of future persecution.

businesses were also extorted, hers was targeted more because "there was more income coming into mine." *Id.* at 165l. Similarly, she testified that she believed the extortion would continue if she relocated within Peru because "this is going on everywhere," and "[her] business was very fruitful." *Id.* at 166. This testimony provides substantial evidence supporting the IJ's and BIA's finding that petitioners were targeted for financial reasons, not on account of any protected ground.

Petitioners dispute this conclusion but do not cite any evidence to support their claim that they were targeted because of the anti-corruption activity of Ms. Chumpitaz-Morales's father. We "make some allowances" for pro se parties, but "cannot take on the responsibility of serving as the litigant's attorney in . . . searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). We therefore will not search for evidence Ms. Chumpitaz-Morales has not herself identified. And even assuming there is evidence that could support a different finding, "[i]t is not our prerogative to reweigh the evidence, but only to decide if substantial evidence supports the IJ's or the BIA's decision." *Jimenez*, 156 F.4th 1046 (brackets and internal quotation marks omitted).

Because the finding that petitioners were targeted for financial reasons was "supported by reasonable, substantial and probative evidence considering the record as a whole," *O.C.V.*, 153 F.4th at 984 (internal quotation marks omitted), we treat it as conclusive, *id.* at 982. We therefore uphold the BIA's determination that petitioners are ineligible for asylum. *See Miguel-Peña*, 94 F.4th at 1159 (stating persecution is not on account of a protected ground "[w]here there is no evidence that

the persecutor would be hostile toward the targeted individuals absent their financial

. . . motives" (internal quotation marks and brackets omitted)).

## C.  Withholding of Removal

"The burden of proof for withholding of removal is higher than for asylum and

requires the applicant to prove a clear probability of persecution on account of a

protected ground."  *Escobar-Hernandez v. Barr*, 940 F.3d 1358, 1362

(10th Cir. 2019) (internal quotation marks omitted).  Therefore petitioners' "failure to

meet the standard of proof for [their] asylum application forecloses [their]

withholding-of-removal claim premised on the same facts."  *Id.*

## D.  CAT Protection

We also uphold the BIA's denial of CAT protection.  "Article 3 of the

Convention Against Torture prohibits the return of an alien to a country where it is

more likely than not that [s]he will be subject to torture by a public official, or at the

instigation or with the acquiescence of such an official."  *Cruz-Funez v. Gonzales*,

406 F.3d 1187, 1192 (10th Cir. 2005).  The BIA concluded Ms. Chumpitaz-Morales

had not established "any connection between the allegedly corrupt mayor and the

extortion and threats she received," and therefore had not shown it is more likely than

not she or her daughter would be "tortured by or at the instigation of or with the

consent or acquiescence . . . of a public official."  R. at 5.

Ms. Chumpitaz-Morales has not meaningfully challenged that ruling in this

appeal.  She asserts the BIA did not thoroughly address her CAT application, and she

maintains she was targeted because of her father's opposition to the mayor's alleged

7

corruption.  But she does not cite any evidence to show she or her daughter are more likely than not to be tortured if returned to Peru.

IV.

For the reasons above, we deny the petition.[3]

Entered for the Court


Bobby R. Baldock<br>
Circuit Judge

---

[3] Ms. Chumpitaz-Morales's brief misrepresents the holdings of several cases it cites.  We suspect this may be due to use of an "artificial intelligence" (AI) product (e.g., ChatGPT, Microsoft CoPilot) which "hallucinated" the cases' purported holdings.  *See Jones v. Kankakee Cnty. Sheriff's Dep't*, --- F.4th ---, 2026 WL 157661, at *2 (7th Cir. Jan. 21, 2026) (defining "a so-called AI 'hallucination,'" as "a circumstance where an AI large language model generates an output that is fictional, inaccurate, or nonsensical").

We may sanction parties who make such misrepresentations.  *See, e.g., Grant v. City of Long Beach*, 96 F.4th 1255, 1257 (9th Cir. 2024) (dismissing counseled appeal because of fabricated citations); 10th Cir. R. 46.5(B), (C).  The government does not request sanctions here; it points out just one of the problematic citations and understates the issue as only a "misplaced" reliance on authority.  Response. Br. at 30 n.2.  We will not sanction Ms. Chumpitaz-Morales.  But parties who use AI products should know they can and do "hallucinate" legal citations, including (as we suspect happened here) by adding citations to cases that bear no relationship to the propositions for which they are cited.  "[A]ll litigants—represented and unrepresented—must read their filings and take reasonable care to avoid misrepresentations, factual and legal." *Jones*, --- F.4th at ---, 2026 WL 157661, at *3.