**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ELFER YASSER GARCIA-TACUNA,

    Petitioner,

v.

ROBERT M. WILKINSON, Acting United
States Attorney General,[*]

    Respondent.

No. 20-9518
(Petition for Review)

_____

**ORDER AND JUDGMENT**[**]
_____

Before **MATHESON**, **BALDOCK**, and **CARSON**, Circuit Judges.
_____

Elfer Yasser Garcia-Tacuna, a native and citizen of Peru, unlawfully entered the

United States in September 2016.  Following his apprehension, he applied for asylum,

withholding of removal, and protection under the Convention Against Torture (CAT).

An immigration judge (IJ) denied his application, and the Board of Immigration Appeals

---

[*] On January 20, 2021, Robert M. Wilkinson became Acting Attorney General of the United States.  Consequently, his name has been substituted for William P. Barr as Respondent, per Fed. R. App. P. 43(c)(2).

[**]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

(BIA) dismissed his appeal. Mr. Garcia-Tacuna now petitions this court for review. Exercising jurisdiction under 8 U.S.C. § 1252, we deny the petition.

## I. **BACKGROUND**

Mr. Garcia-Tacuna served in the Peruvian military for two years, rising to the rank of second sergeant. He returned to his remote indigenous village, where he worked on his parents' farm and led a community association that provided "security to the town." Admin. R. at 103. The Peruvian government supplied rifles to the association.

One evening in May 2016, eight to ten armed members of the Tupac Amaru Revolutionary Movement (MRTA) appeared at Mr. Garcia-Tacuna's home and sought to recruit him because he "was a leader" and had "served in the military." *Id.* at 107. When he refused, MRTA members "hit [him] with their weapons[ ] and . . . took [him and another community leader] to the river area," *id.*, where they "tied [their] hands, dunked [them] in the water, beat [them]," and threatened to kill them if they did not "work for [MRTA]," *id.* at 180. MRTA released the two men and left when Mr. Garcia-Tacuna's family and other people from the village intervened. *Id.* at 108; *see also id.* at 180. This encounter lasted between 30 and 60 minutes. Mr. Garcia-Tacuna suffered an unspecified injury to his knees. He reported the incident to local authorities, but, he said, "[T]hey cannot provide . . . any security." *Id.* at 110.

Fearing he might be killed, Mr. Garcia-Tacuna left his village with his wife and nine-year-old son. They moved to a town about "[f]our to five hours away," where his aunt lives. *Id.* at 109. There, he worked in different jobs and had no further encounters

2

with MRTA. Nevertheless, he "always was fearful that [MRTA] could show up." *Id.* at 110. So, after about four or five months, he left (alone) for the United States.

At a hearing before an IJ, Mr. Garcia-Tacuna conceded his unlawful entry into the United States and sought asylum, withholding of removal, and CAT relief based on his fear of MRTA. He claimed that if he returned to Peru, MRTA would persecute him based on his membership in two social groups: "Peruvian men with prior military leadership who refuse to join 'MRTA'"; and "Peruvian men who have held prior municipal leadership roles in protecting indigenous communities." *Id.* at 129. Mr. Garcia-Tacuna also claimed he feared being tortured by MRTA and that the police would not protect him. The IJ denied relief and ordered Mr. Garcia-Tacuna removed.

The BIA dismissed Mr. Garcia-Tacuna's appeal. First, the BIA concluded that Mr. Garcia-Tacuna was not entitled to asylum because he did not show past persecution or a well-founded fear of future persecution. As to past persecution, the BIA determined the harm he suffered was neither severe enough to constitute persecution nor was it on account of a protected characteristic. As to future persecution, it observed that (a) the Peruvian government had taken steps against MRTA by supplying weapons to Mr. Garcia-Tacuna's village and, through counterterrorism actions, had reduced MRTA's membership to roughly 100; (b) MRTA members sought to recruit, rather than persecute, Mr. Garcia-Tacuna; and (c) Mr. Garcia-Tacuna could relocate within Peru to avoid MRTA and it would be reasonable to expect him to do so. Second, the BIA determined that because Mr. Garcia-Tacuna could not establish asylum, he could not meet the more stringent burden for withholding of removal. And third, the BIA concluded CAT relief

3

was unavailable because Mr. Garcia-Tacuna had not shown that his mistreatment qualified as torture or that he likely would be tortured if removed to Peru.

## II. **DISCUSSION**

"Because a single member of the BIA affirmed the IJ's decision in a brief order, we review the BIA's opinion rather than the decision of the IJ." *Neri-Garcia v. Holder*, 696 F.3d 1003, 1008 (10th Cir. 2012) (citation omitted). "When reviewing BIA decisions, an appellate court must look to the record for substantial evidence supporting the agency's decision: Our duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole." *Sarr v. Gonzales*, 474 F.3d 783, 788 (10th Cir. 2007) (brackets and internal quotation marks omitted). "Agency findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* at 788-89 (internal quotation marks omitted).

### A. *Asylum*

"To qualify for asylum, a noncitizen must demonstrate either past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Addo v. Barr*, 982 F.3d 1263, 1269 (10th Cir. 2020) (internal quotation marks omitted). "In this circuit, the ultimate determination whether an alien has demonstrated persecution is a question of fact, even if the underlying factual circumstances are not in dispute and the only issue is whether those circumstances qualify as persecution." *Hayrapetyan v. Mukasey*, 534 F.3d 1330, 1335 (10th Cir. 2008) (internal quotation marks omitted). Thus, we may not

4

reverse unless "any reasonable adjudicator would be compelled to conclude to the contrary" on the issue of persecution. 8 U.S.C. § 1252(b)(4)(B).

1. **Past Persecution**

To establish past persecution, "a showing of three elements is required: (1) an incident, or incidents, that rise to the level of persecution; (2) that is on account of one of the statutorily-protected grounds; and (3) is committed by the government or forces the government is either unable or unwilling to control." *Rivera-Barrientos v. Holder*, 666 F.3d 641, 646 (10th Cir. 2012) (internal quotation marks omitted).

Mr. Garcia-Tacuna contends the harm inflicted by MRTA was persecution. But, in immigration law, "[p]ersecution is an extreme concept that does not include every sort of treatment our society regards as offensive." *Zhi Wei Pang v. Holder*, 665 F.3d 1226, 1233 (10th Cir. 2012) (internal quotation marks omitted). Our cases show the violence necessary to establish persecution. *Compare Witjaksono v. Holder*, 573 F.3d 968, 977 (10th Cir. 2009) (no persecution where alien was not seriously injured during one "violent episode" and another episode that caused physical injury did "not requir[e] medical attention"); *Sidabutar v. Gonzales*, 503 F.3d 1116, 1124 (10th Cir. 2007) (no persecution where alien was beaten repeatedly, claimed to have twice suffered serious injuries, was repeatedly confronted, and was struck and his motorcycle was burned); *Kapcia v. INS*, 944 F.2d 702, 704, 708 (10th Cir. 1991) (no persecution where alien was detained twice for two-day periods "during which time he was interrogated and beaten[,] . . . his parents' home was searched, he was assigned poor work tasks and denied bonuses, his locker was broken into many times, and he was conscripted into the . . .

5

army where he was constantly harassed"), *with Karki v. Holder*, 715 F.3d 792, 804-05 (10th Cir. 2013) (persecution where alien "was rendered semi-unconscious" during a beating and "was the intended target of [a] lethal car bombing"); *Hayrapetyan*, 534 F.3d at 1337-38 (persecution where alien was jailed on two occasions, "knocked to the ground and kicked . . . on one occasion, and nearly run over by a vehicle on another," "her husband was beaten . . . so severely that he had to be hospitalized for fifteen days," her "daughter was almost abducted," she "received telephone threats at home," and "she was fired from her job").

Without a stronger record, we cannot say a reasonable adjudicator would be compelled to conclude MRTA's actions qualify as persecution under our precedent or that the IJ or BIA erred. Although his recounting of MRTA's actions raise persecution concerns, Mr. Garcia-Tacuna provided few details. His encounter with MRTA lasted no more than an hour, and he identified no resulting injury that required medical attention.

### 2. **Well-Founded Fear of Future Persecution**

Mr. Garcia-Tacuna could still qualify for asylum by demonstrating a well-founded fear of future persecution. *See Ritonga v. Holder*, 633 F.3d 971, 976 (10th Cir. 2011). But a "[f]ear of persecution is not well-founded if the applicant can avoid persecution by relocating to another part of the country and it would be reasonable to expect [him] to do so." *Id.* at 976-77. "The question whether a noncitizen can avoid future persecution by internally relocating is a factual determination." *Addo*, 982 F.3d at 1268.

As the BIA noted, Mr. Garcia-Tacuna relocated to his aunt's village after his encounter with MRTA. He remained there for four to five months with his wife and son,

6

worked various jobs, and experienced no further MRTA encounters. Although Mr. Garcia-Tacuna argues "there is . . . no place where [he] could go in Peru to escape the[ ] [MRTA]," Pet'r Br. at 29-30, he has offered no supporting evidence. He thus has not shown that any reasonable adjudicator would be compelled to conclude he could not internally relocate within Peru to avoid persecution.

## B. *Withholding of Removal*

"To be eligible for withholding of removal, an applicant must demonstrate that there is a clear probability of persecution because of his race, religion, nationality, membership in a particular social group, or political opinion." *Zhi Wei Pang*, 665 F.3d at 1233 (internal quotation marks omitted). Because Mr. Garcia-Tacuna has not met the requirements for asylum, he cannot "satisfy the higher standard of eligibility for withholding of removal." *Id.* at 1234.

## C. *CAT Relief*

"Article 3 of the [CAT] prohibits the return of an alien to a country where it is more likely than not that he will be subject to torture by a public official, or at the instigation or with the acquiescence of such an official." *Cruz-Funez v. Gonzales*, 406 F.3d 1187, 1192 (10th Cir. 2005) (brackets and internal quotation marks omitted). "[W]illful blindness suffices to prove acquiescence." *Id.* (internal quotation marks omitted). The BIA's CAT "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (internal quotation marks omitted).

Mr. Garcia-Tacuna argues "it is more likely than not that he would be tortured by MRTA with the acquiescence of the Peruvian government if he returned to Peru." Pet'r Br. at 31. He claims that "the Peruvian government is aware of the torture being committed against its citizens by MRTA in remote and isolated villages in Peru and yet it refuses to intervene." Pet'r Br. at 33. In rejecting this claim, the BIA referenced evidence showing the government's successful counterterrorism efforts. *See, e.g.*, Admin. R. at 148-49 (Global Security Report, indicating that Peruvian police have captured MRTA's leaders and have "almost completely dismantled" their military forces); *id.* at 149 (same, estimating that MRTA has "roughly 100 remaining members" and that "[m]ost members have been jailed"). Further, as Mr. Garcia-Tacuna testified, the Peruvian government "ask[ed] . . . every town" to organize a security committee for protection against "terrorist[s]," *id.* at 103, and it supplied rifles for that purpose, *id.* at 105. Mr. Garcia-Tacuna has not identified evidence that would compel a reasonable adjudicator to conclude the Peruvian government would acquiesce in his torture by MRTA. His CAT claim therefore fails.

## III. **CONCLUSION**

We deny Mr. Garcia-Tacuna's petition for review.

Entered for the Court


Scott M. Matheson, Jr.
Circuit Judge

8